Alleging that it was the owner of a two ton Federal Truck and a one and one-half ton Chevrolet Truck, which were being held by defendant without right and despite plaintiff's demand for their delivery, plaintiff filed suit, coupled with a writ of sequestration, asking that its ownership be recognized. Defendant filed an exception of no cause or right of action, followed by a "motion to dismiss" the writ of sequestration. In this motion, defendant declared himself to be the owner of the two trucks sequestered, setting forth that he had, in 1947, delivered the two trucks in controversy to one R. H. Aulds, who took delivery of the trucks with the understanding that he would give defendant a chattel mortgage covering the purchase price that Aulds failed to deliver the mortgage as agreed and in August, 1948, delivered *Page 78 
both of the trucks to defendant's place of business with the statement that he could not pay for the trucks. The motion further set forth that the sale by Aulds to plaintiff occurred at a time when the trucks were in defendant's possession and the property of defendant. Defendant based his claim of ownership on the premise that no bill of sale had ever been delivered from him to Aulds, and in the alternative, if the Court should hold that a sale was made by defendant to Aulds, that defendant had reacquired title when the trucks were delivered to his place of business by Aulds.
The motion concluded with a prayer for damages and attorney's fees.
Defendant's exception of no cause of action was overruled and his "motion to dismiss" on application of plaintiff was considered as an answer.
After trial, judgment was rendered for plaintiff and the case is before us upon defendant's appeal.
At the trial of the case, it was established that the two trucks in controversy were owned by the defendant, Bernelle; that on September 27, 1947, he sold the Chevrolet to R. H. Aulds for a consideration of $1200.00, evidenced by Aulds' note for this amount. It also developed that defendant sold Aulds the Federal Truck on November 15, 1947; that there was an understanding between defendant and Aulds that Aulds would later sign a note and chattel mortgage covering the agreed purchase price. This was never done.
Aulds took possession of the trucks after their sale to him and continued to operate both vehicles in connection with his trucking business through the winter of 1947 and up until August, 1948. During these months defendant did considerable repair work for Aulds and on the trial introduced an account beginning in March, 1947 and running until June, 1948. The account does not show the nature of charges but each entry is itemized with the garage repair ticket number. The total of the tickets shows approximately $5000.00 in charges with credits totaling $2600.00. Defendant testified that Aulds on August 23, 1948, caused the two trucks to be driven to defendant's garage and surrendered same with the statement that he could not pay for them. Defendant further testified that Aulds stated that " 'he was going out and get Gentry to pay me up everything, trucks and all.' " He further quoted Aulds as saying, " 'whatever you and Gentry does is all right with me.' " The Gentry referred to is E. H. Gentry, President of the Ouachita Trucking Company, Inc., plaintiff herein.
The plaintiff corporation introduced in evidence a notarial bill of sale from R. H. Aulds to itself covering ten or twelve trucks with trailers and others with special equipment, which apparently constituted all of the property used by Aulds in carrying on a trucking business. The consideration named in the bill of sale was the assumption on the part of the vendee of debts owed by the vendor to two banks in the City of Monroe, the Commercial Securities Company, a bank and motor company in Union Parish, and to Montgomery Ward and Company. These amounts totaled approximately $12,000.00. Aulds warranted the property to be free of mortgages except a list of eighteen chattel mortgages shown on a mortgage certificate attached to the bill of sale.
We find the bill of sale from Aulds to the plaintiff corporation valid in form. Aulds testified that he was in financial trouble and that he had tried to borrow money on his equipment from several sources, including the bank at Bernice. These efforts being unsuccessful, he had sold the equipment to plaintiff corporation under the terms set forth in the above mentioned bill of sale.
From our study of the voluminous record, we find that the two trucks in controversy were sold by defendant Bernelle to R. H. Aulds, one in August, 1947, the other in November, 1947. We further find that Aulds conveyed his title to the plaintiff corporation on August 28, 1948.
We next consider defendant's alternative contention that should the Court find that Aulds acquired title to the trucks by purchase from the defendant in 1947, that this title was re-acquired by defendant on August 23, 1948, some days prior to the execution of the bill of sale to the *Page 79 
plaintiff corporation. Aulds denied that he had turned over the two trucks to defendant in payment of his indebtedness to defendant for the purchase price. Defendant's testimony on this point is that Aulds caused the trucks to be brought to his place of business and delivered the keys to defendant with a statement that he could not pay for the trucks and that he at that time asked Aulds about the repair bills that were due him and that Aulds replied that he would pay in a day or two. Defendant further testified that Aulds told him that he was going to get Gentry to pay his bills to defendant, as defendant testified, "trucks and all." Defendant introduced several witnesses who were in the garage at the time Aulds allegedly delivered the trucks and plaintiff introduced testimony relative to statements by defendant and his attorney, made the day before this suit was filed, that defendant had a chattel mortgage or vendor's lien against the trucks and for that reason (and not as owner), his right was superior to that then being asserted by Gentry on behalf of plaintiff.
We conclude that, at the time of the sale to plaintiff by Aulds, there was no definite and final arrangement between Aulds and defendant whereby Aulds had surrendered his title. It rather appears that defendant was holding possession of the trucks pending arrangements by Aulds to make some solution of his troubled financial affairs.
It is apparent from the record that Gentry, president of the plaintiff corporation, knew that Aulds was in a hopeless financial condition and that the trucks had been purchased by Aulds from defendant and that defendant was claiming an unpaid balance. However, no issue of avoidance of this contract under Article 7 of Chapter 2 of the Revised Civil Code is presented by the pleadings now before us.
No useful purpose would be served by a further discussion of the testimony. Sufficient it is to say that there is ample support for the conclusion arrived at by our learned brother of the District Court, who held in favor of plaintiff.
The judgment appealed from is affirmed, with costs.